WESTFIELD INSURANCE COMPANY, APPELLEE, *v*. HUNTER ET AL.; GRINNELL MUTUAL REINSURANCE COMPANY, APPELLANT.

[Cite as *Westfield Ins. Co. v. Hunter*, 128 Ohio St.3d 540, 2011-Ohio-1818.]

*Homeowner's insurance — Liability coverage — Exclusion for claims arising out of other premises owned by insured that are not insured under the policy.*

(Nos. 2009-2214 and 2010-0024 — Submitted January 19, 2011 — Decided April 20, 2011.)

APPEAL from and CERTIFIED by the Court of Appeals for Butler County, Nos. CA2009-05-134 and CA2009-06-157, 2009-Ohio-5642.

_____

SYLLABUS OF THE COURT

An exclusion in a homeowner's insurance policy for claims "arising out of" premises owned by the insured other than the insured location excludes coverage for premises-based liability claims, such as claims that arise from the quality or condition of the premises. Moreover, although the exclusion does not bar coverage of claims that arise from the insured's alleged negligence if that negligence is unrelated to the quality or condition of the premises, it does exclude coverage for claims based upon the insured's ownership of the property upon which the injury occurred.

_____

O'CONNOR, C.J.

{¶ 1} In this appeal, we interpret an exclusion in a homeowner's policy that denies coverage for claims "arising out of" premises that are owned by the insured but are not an insured location under the policy. We hold that an exclusion in a homeowner's insurance policy for claims "arising out of" premises owned by the insured other than the insured location excludes coverage for claims

that arise from the quality or condition of the premises and claims based merely upon the insured's ownership of the property upon which the injury occurred.

{¶ 2} Because the barren record before us does not sufficiently establish whether the claims raised in the underlying action are claims related to the quality or condition of the premises or whether the claims are based on another theory of negligence, we remand the cause to the trial court to make that determination and then apply our holding.

**Relevant Background**

{¶ 3} Michael and Marilyn Hunter are Ohio residents who reside in a home in Hamilton. The Hunters' Ohio premises are insured by a homeowner's policy issued by appellee, Westfield Insurance Company. Westfield's policy also provides the Hunters with personal liability coverage for damages arising from bodily injury or property damages.[1] It excludes, however, coverage for claims "arising out of" premises owned by an insured that are not an insured location.[2]

---

1. {¶ a} The policy issued by Westfield states:

{¶ b} "If a claim is made or a suit brought against an **insured** for damages because of **bodily injury** * * * caused by an **occurrence** to which this coverage applies, we will:

{¶ c} "1. Pay up to our limit of liability for the damages for which the **insured** is legally liable * * * ; and

{¶ d} "2. Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false or fraudulent." (Boldface sic.)

{¶ e} Thus, the liability coverage provided to the Hunters was for damages they might become legally obligated to pay if those damages were caused by an "occurrence." An occurrence is defined in Westfield's policy as an accident that results in bodily injury. The parties stipulated that the accident at issue is an "occurrence" under Westfield's policy.

2. {¶ a} The exclusion provides:

{¶ b} "**1. Coverage E – Personal Liability** and **Coverage F – Medical Payments to Others** do not apply to **bodily injury** or **property damage**:

{¶ c} " * * *

{¶ d} " e. Arising out of a premises:

{¶ e} "(1) Owned by an i**nsured**;

{¶ f} "(2) Rented to an **insured;** or

{¶ g} "(3) Rented to others by an i**nsured**;

{¶ h} "that is not an **insured location**." (Boldface sic.)

**{¶ 4}** The Hunters own a farm in Indiana that is not a named insured location under the Westfield policy. Rather, the Hunters purchased liability insurance from appellant, Grinnell Mutual Reinsurance Company, to insure the farm.

**{¶ 5}** On July 7, 2001, the Hunters' minor grandchild, Terrell Whicker, and another minor relative, Ashley Arvin, were riding all-terrain vehicles ("ATV") on the farm. Terrell was injured in an accident that he alleged was caused when Ashley drove her vehicle toward Terrell but failed to turn away in time, thereby running over him and his vehicle. Terrell alleges that he suffered fractures to his femurs, ankle, and skull, as well as other injuries, as a result of the accident.

**{¶ 6}** Terrell and his parents brought suit against Ashley, her mother and stepfather (who were present at the farm during the incident), and the Hunters. Insofar as the complaint pertains to Ashley's mother and stepfather, it pleads a cause of negligent entrustment. And as pleaded against the Hunters, it alleges that they knew of Ashley's "reckless and/or negligent tendencies" and "had the ability and duty to exercise control" over Ashley, but breached that duty, and that as "a proximate and foreseeable result of the negligence" of the Hunters, Terrell sustained injuries. The complaint is devoid of any allegation that a condition on the property contributed to the incident giving rise to the accident.

**{¶ 7}** Westfield brought a declaratory-judgment action against Grinnell, the Hunters, and the Whickers, seeking a declaration that it had no duty to defend or indemnify the Hunters for the claims asserted in Terrell's lawsuit. Grinnell answered and counterclaimed, asserting that both insurers were obligated to provide coverage, on a pro rata basis, to the Hunters.

**{¶ 8}** On cross-motions for summary judgment, the trial court granted Westfield's motion and denied Grinnell's and the Whickers'. The court reasoned that the claims raised by the Whickers "arose out of" premises that were not

insured by Westfield, i.e., the farm, and therefore that Westfield had no obligation to defend or indemnify the Hunters for the Whickers' claims.

{¶ 9}   On appeal by Grinnell and the Whickers, the court of appeals affirmed.  Like the trial court, it held that there was no coverage for the Hunters under the Westfield policy for the Whickers' claims because the Hunters' farm was not an "insured location" under the Hunters' homeowner's policy and, therefore, that coverage was precluded by the "other premises" exclusion.  2009-Ohio-5642, 2009 WL 3415894, ¶ 36.  Grinnell appealed to us for discretionary review and secured an order from the court of appeals certifying that its decision in this case is in conflict with that of another court of appeals.  We granted discretionary review, 124 Ohio St.3d 1492, 2010-Ohio-670, 922 N.E.2d 227, and recognized the conflict, 124 Ohio St.3d 1490, 2010-Ohio-670, 922 N.E.2d 226, which presents the following question:  "When construing an insurance policy exclusion, does an injury 'arise out' of a premises only if some dangerous condition exists on the premises that caused or contributed to the injury, or must the injury only originate in or have a causal connection with the premises?"  We answer that question by holding that an exclusion in a homeowner's insurance policy for claims "arising out of" premises owned by the insured other than the insured location excludes coverage for premises-based liability claims, such as those that arise from the quality or condition of the premises.  Moreover, although the exclusion does not bar coverage of claims that arise from the insured's alleged negligence if that negligence is unrelated to the quality or condition of the premises, it does exclude coverage for claims based  upon the insured's ownership of the property upon which the injury occurred. Accordingly, we reverse the court of appeals.

## Analysis

### *A*

4

**{¶ 10}** At the outset, we reiterate some well-settled principles of insurance law that guide us here.

**{¶ 11}** Ambiguous provisions in an insurance policy must be construed strictly against the insurer and liberally in favor of the insured. See, e.g., *King v. Nationwide Ins. Co.* (1988), 35 Ohio St.3d 208, 519 N.E.2d 1380, syllabus. This is particularly true when considering provisions that purport to limit or qualify coverage under the policy. *Am. Fin. Corp. v. Fireman's Fund Ins. Co.* (1968), 15 Ohio St.2d 171, 174, 44 O.O.2d 147, 239 N.E.2d 33. " '[A]n exclusion in an insurance policy will be interpreted as applying only to that which is *clearly* intended to be excluded.' (Emphasis sic.) *Hybud Equip. Corp. v. Sphere Drake Ins. Co., Ltd*. (1992), 64 Ohio St.3d 657, 665, 597 N.E.2d 1096." *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6.

**{¶ 12}** With those guiding principles set forth, we proceed with our review of the courts' decisions on summary judgment. We apply the de novo standard of review to a decision granting or denying summary judgment based on interpretation of an insurance contract. *Nationwide Mut. Fire Ins. Co. v. Guman Bros. Farm* (1995), 73 Ohio St.3d 107, 108, 652 N.E.2d 684.

*B*

**{¶ 13}** The issue here is to what degree a negligence claim must be connected to the premises in order for the exclusion to be triggered. As the Massachusetts Appeals Court phrased the inquiry, "[t]he question is whether the exclusion ought to be read as pertaining to anything that occurs on the off-policy premises or whether the exclusion is limited to accidents that occur because of a condition of the off-policy premises, such as a hole in the walkway, a loose step, defective plumbing, or faulty electric wiring." *Callahan v. Quincy Mut. Fire Ins. Co.* (2000), 50 Mass.App.Ct. 260, 261, 736 N.E.2d 857.

**{¶ 14}** As the court of appeals in this case recognized, we have not interpreted the exclusion for claims "arising out of" other property in the context

of homeowner's policies. And the Ohio appellate courts that have considered the question have reached different results.

**{¶ 15}** The Eighth District Court of Appeals interprets the exclusion broadly. It holds that " '[a]rising out of' means generally 'flowing from' or 'having its origin in' " and that in order for coverage to be excluded, there need only be some causal link to the property rather than a showing that the premises were the proximate cause of the injury. *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 77, 29 OBR 83, 503 N.E.2d 212, quoting *Ins. Co. of N. Am. v. Royal Indemn. Co.* (C.A.6, 1970), 429 F.2d 1014, 1017. The court of appeals in this case followed the rationale of *Turner*.

**{¶ 16}** A narrower view of the exclusion was adopted by the Second District Court of Appeals in a more recent case, *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317. *Guillermin* holds that an injury arises out of the premises, and coverage is therefore excluded, only if there is a dangerous condition on the premises that causes or contributes to the bodily injury for which coverage is sought. Id. at 565.

**{¶ 17}** Although both approaches are understandable, for the reasons that follow, we hold that the *Guillermin* rule is better reasoned and that the exclusion in Westfield's policy is narrow enough to permit coverage for claims like that presented here.

*C*

**{¶ 18}** The broader rule set forth in *Turner* is based on the belief that the term " '[a]rising out of' means generally 'flowing from' or 'having its origin in.' *Ins. Co. of North America v. Royal Indemn. Co.* (C.A.6, 1970), 429 F.2d 1014 [1017]. The phrase generally indicates a causal connection with the insured property, not that the insured premises be the proximate cause of the injury." *Turner*, 29 Ohio App.3d at 77, 29 OBR 83, 503 N.E.2d 212. We think that the understanding of the exclusion set forth in *Turner* is too sweeping. Indeed, under

the construction adopted in *Turner*, any claim for injury that occurs on premises owned by the insured other than the insured homeowner's primary residence would be denied, and the insured would not have liability coverage.

{¶ 19} The better-reasoned interpretation of the exclusion is that adopted by the court in *Guillermin* and, before it, by the Kentucky Supreme Court in *Eyler v. Nationwide Mut. Ins. Co.* (Ky.1992), 824 S.W.2d 855.

{¶ 20} In *Eyler*, the court faced an exclusion similar, but not identical, to the one at issue here. It recognized that the phrase "arising out of" is one that "suggests the necessity for a causal connection between the premises and the injury. Ordinarily, 'arising out of' does not mean merely occurring on or slightly connected with but connotes the need for a direct consequence or responsible condition. As we view it, to satisfy the 'arising out of' exclusion in the policy, it would be necessary to show that the premises, apart from the insured's conduct thereon, was causally related to the occurrence." Id. at 857. We agree, as do other courts that have considered the issue.

{¶ 21} For example, in *Lititz Mut. Ins. Co. v. Branch* (Mo.App.Ct.1977), 561 S.W.2d 371, the court confronted an exclusion that denied coverage for bodily injuries "arising out of any premises, other than [the] insured premises, owned, rented or controlled by any insured." Id. at 373, fn. 1. After the insured's dog bit a child while both the dog and the child were on the insured's commercial property, the child's parents sought coverage for the injuries. The court found that the exclusion did not apply. In so concluding, it recited the dictionary definition of "premises" and stated:

{¶ 22} "It is apparent that 'premises' in common parlance and in the policy itself contemplates the land and more or less permanently affixed structures contained thereon. * * * A dog, whether permanently kenneled or tethered on the property, is not part of the premises.

7

{¶ 23} "It cannot therefore be said that a dog bite arises out of[,] originates from, grows out of, or flows from the premises. That it occurs upon the premises does not establish a causal connection between the bite and the premises." Id. at 373.

{¶ 24} More recently, the Massachusetts Appeals Court reached the same conclusion in a case that is apposite here. In *Callahan*, the insureds kept a dog, Harley, for protection. 50 Mass.App.Ct. at 263, 736 N.E.2d 857. The insureds had a homeowner's policy for property they owned in New Hampshire, and Harley traveled with his masters between New Hampshire and another home they kept in Marshfield, Massachusetts, which was insured by an insurer different from the insurer that covered the New Hampshire property. Harley bit an invitee on the Marshfield property, and the insurer for the New Hampshire property denied coverage and a defense to the homeowners, asserting that the exclusion for claims for bodily injury " 'arising out a premises[] owned by an insured * * * that is not an insured location' " applied. Id. at 261. The trial court agreed, but the appellate court reversed. It stated, "The point is, Harley was not a condition of the Marshfield premises, as a protective electric fence would be. Harley's bite was no more connected to the Marshfield real estate than had Callahan spilled hot coffee on a guest on those premises. It happened there, but did not 'arise out of,' as the phrase is understood." Id. at 263. The appellate court concluded that Callahan's liability stemmed from his "personal" tortious conduct in harboring Harley, not from any condition of the Marshfield property. Id.

{¶ 25} We believe that the rationale of *Branch* and *Callahan* is the better reasoned one for analyzing claims alleging that the injury occurred as a result of the insured's negligence when the negligence is unrelated to the quality or condition of the property, solely because the insured owned the property where the injury occurred. We therefore hold that an exclusion in a homeowner's insurance policy for claims "arising out of" premises owned by the insured other

than the insured location excludes coverage for premises-based liability claims, such as those that arise from the quality or condition of the premises. Moreover, although the exclusion does not bar coverage of claims that arise from the insured's alleged negligence if that negligence is unrelated to the quality or condition of the premises, it does exclude coverage for claims based upon the insured's ownership of the property upon which the injury occurred.

{¶ 26} The Whickers' claims in this case appear to be grounded on the theory that the Hunters failed to exercise control over Ashley's use of an ATV on the property. The complaint is devoid of any mention of the quality or condition of the land upon which the accident took place. Necessarily then, our inquiry must focus on the insureds' alleged negligence in permitting Ashley to operate the ATV in a negligent or reckless manner, which has no causal link to the quality or condition of the premises.

{¶ 27} The simple fact that Ashley's misconduct took place on land is a matter of the law of gravity, not the law of insurance. As the court recognized in *Eyler,* "[w]hile most of the endeavors of mankind occur upon the surface of the earth and without it, harm could not occur, the law nevertheless imposes liability for negligent personal conduct upon the recognition that, in most cases, human behavior is the primary cause of the harm and the condition on earth only secondary." 824 S.W.2d at 857. If the Whickers' complaint is based on the theory that the Hunters failed to properly supervise Ashley while she was on the Hunters' property and that that failure gave rise to Terrell's injuries, then the exclusion does not bar coverage in this case. But if the theory of negligent supervision is a subterfuge to avoid the "other premises" exclusion because the Whickers' claims are based on the Hunters' ownership of the property, then the coverage is not available. On the scant record before us, we cannot make that determination. Accordingly, we remand this cause to the trial court for further proceedings to ascertain the nature and factual basis for the Whickers' claims

against the Hunters. On remand, the trial court should determine whether the Whickers' theory of liability is that the Hunters breached a personal duty that the Hunters assumed for the care and control of Terrell and Ashley, in which case the exclusion would not apply, or whether the Whickers' claims are based only on the fact that the Hunters owned the property where the injuries occurred, in which case the exclusion does apply. We do not believe that our holding in this case leaves insurers without means to restrict coverage. An insurer can use other exclusionary language to effectuate a broader bar to coverage. Indeed, other insurers evidently have done so for decades. *Hanson v .Gen. Acc. Fire & Life Ins. Corp.* (Fla.App.1984), 450 So.2d 1260, 1261 ("For instance, it was noted in *Jackson v. Lajaunie*, 270 So.2d 859 (La.1972), that a clause excluding accidents that happen 'in connection with' owned, but uninsured, premises excludes more broadly than a clause excluding accidents that 'arise of out of' such premises"). Insurers are free to draft exclusions to more fully preclude coverage for occurrences like that at issue in this litigation, but the use of the causal phrase "arising out of" in the exclusion is insufficient to do so.

Judgment reversed

and cause remanded.

PFEIFER and MCGEE BROWN, JJ., concur.

CUPP, J., concurs in syllabus and judgment.

LUNDBERG STRATTON, O'DONNELL, and LANZINGER, JJ., dissent.

_____

**CUPP, J., concurring.**

{¶ 28} I agree with some but not all of the majority opinion's analysis. I therefore concur only in the syllabus and judgment and write separately to explain my view of this case.

{¶ 29} In their decision-making, each of the lower courts relied heavily on the Eighth District's decision in *Nationwide Mut. Fire Ins. Co. v. Turner* (1986),

29 Ohio App.3d 73, 29 OBR 83, 503 N.E.2d 212, to support the determination that in the policy at issue in this case, the exclusion for claims "arising out of" the Hunters' Indiana premises applies to relieve appellee, Westfield Insurance Company, of the obligation to defend or indemnify the Hunters.

{¶ 30} In my opinion, however, *Turner* is distinguishable from the situation presented here in a fundamental way. Rather than interpreting a policy *exclusion*, as exists in this case, *Turner* interpreted as a *coverage* provision a similar phrase at issue therein: "arising out of the ownership, maintenance or use of the real * * * property." Id.

{¶ 31} In the area of liability-insurance law, very different standards apply to the interpretation of a coverage provision than apply to the interpretation of an exclusion, although both are construed against the insurer. A liability *coverage* provision is interpreted broadly, and a general presumption in favor of coverage must be overcome in order for coverage to be denied. See, e.g., *Stickovich v. Cleveland* (2001), 143 Ohio App.3d 13, 37, 757 N.E.2d 50 (recognizing that the phrase " 'arising out of' in a liability insurance policy affords very broad coverage" and citing *Turner* as one of the cases that reached that conclusion).

{¶ 32} On the other hand, an *exclusion* is interpreted narrowly in order not to defeat coverage that would apply absent the exclusion. The general presumption in favor of coverage operates to make an exclusion barring coverage applicable only if it is clearly expressed. *Sharonville v. Am. Emps. Ins. Co.*, 109 Ohio St.3d 186, 2006-Ohio-2180, 846 N.E.2d 833, ¶ 6. See 7 Russ and Segalla, Couch on Insurance (3d Ed.2010), Section 101:52, which explains that when an insurance policy employs language such as "arising out of" in describing the coverage provided, the phrase is given a broad and comprehensive meaning, but if the phrase is used "in an exclusionary provision rather than a grant of coverage," it "will be interpreted narrowly against the insurer."

**{¶ 33}** Because the situation in *Turner* differs from the situation in this case (coverage in *Turner* versus exclusion of coverage here), I view *Turner* as inapposite to the case we now decide. Neither the trial court nor the court of appeals recognized this coverage-versus-exclusion distinction when each relied on *Turner*'s analysis to support its ruling. In fact, *Turner* is inapplicable to the resolution of this case. In addition, the cases on motor vehicle insurance relied on by the lower courts are also inapposite for reasons that include the fact that they involved the interpretation of coverage provisions rather than exclusions.

**{¶ 34}** Because of the coverage-versus-exclusion distinction, the *Turner* decision, which involves an issue of coverage, and the Second District's decision in *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317, which involves an exclusion, are not in conflict with each other. The bottom line, then, is that it is evident that the courts below have relied on cases clearly distinguishable from the one now before this court.

**{¶ 35}** Because *Turner* and *Guillermin* are not conflicting decisions, the appellate decision in this case (which erroneously followed *Turner*) and *Guillermin* are not truly in conflict either. I therefore do not approach this case from the perspective of answering the conflict issue as certified. However, any obstacles to resolving the issues of this case are obviated by the fact that this court accepted a discretionary appeal as well as the certified conflict, and therefore the issues are properly presented to us for review.

**{¶ 36}** The key question to be resolved is whether the exclusion for claims arising out of the premises should apply to exclude coverage for the claims at issue under the Hunters' policy with Westfield. If the exclusion is inapplicable in the facts and circumstances involved here, then coverage exists under that policy pursuant to its terms.

**{¶ 37}** A Missouri appellate court in *Lititz Mut. Ins. Co. v. Branch* (Mo.App.1977), 561 S.W.2d 371, 374, succinctly explained the proper scope of

this exclusion as it relates to the essentials of a homeowner's policy in the following often cited passage:

{¶ 38} "The personal liability insured against [by a homeowner's policy] is of two kinds: first, that liability which may be incurred because of the condition of the premises insured; secondly, that liability incurred by the insured personally because of his tortious personal conduct, not otherwise excluded, which may occur at any place on or off the insured premises. The insurance company may well limit (and has by [the relevant exclusion]) its liability for condition of the premises to the property insured for which a premium has been paid. It is reasonable that the company may not provide for liability coverage on 'conditions' which cause injury on other uninsured land. * * * It is to be expected, therefore, that the company's liability for condition of the premises would be restricted to accidents happening on or in close proximity to the insured premises, and that premiums would be charged with that in mind. It would be unreasonable to allow an insured to expand that coverage to additional land and structures owned, rented or controlled by him which are unknown and not contemplated by the company.

{¶ 39} "The company has not chosen to geographically limit the coverage provided for tortious personal conduct of the insured. If it had so intended, it could simply have provided that the exclusion ran to an accident 'occurring on' other owned premises. There appears to be little reason to exclude personal tortious conduct occurring on owned but uninsured land, as little correlation exists between such conduct and the land itself."

{¶ 40} As this passage accurately points out, a standard homeowner's insurance policy, such as the Westfield policy at issue in this case, includes at least two essential types of liability coverage. One type is for occurrences that happen on or in close proximity to insured premises owned by the insured. A second type of liability coverage, distinct from the first type, is for tortious

personal conduct. This second type not only applies to occurrences related to the insured premises, but also provides liability coverage to the insured anywhere, unless an exclusion in the policy clearly limits this broad personal liability coverage.

{¶ 41} This second type of homeowner's liability coverage covers "a broad range of liabilities which have nothing to do with the insured's residence but to which most individuals are exposed as a matter of their routine existence. * * * [M]ost non-automobile related accidents * * * occurring away from the insured's residence, for which an insured is liable on account of negligence, will be covered under the liability provisions of a homeowners policy." 2 Rowland H. Long and Peter M. Lencsis, The Law of Liability Insurance (2008), Section 9.01.

{¶ 42} I agree with the logic underlying the analysis in *Lititz Mut. Ins. Co. v. Branch*, which is consistent with the analysis in *Guillermin*. I am therefore in agreement with the majority's conclusion that the exclusion for claims arising out of the premises does not serve to defeat coverage for all occurrences on an insured's other owned property. Rather, it is the character or nature of the claim asserted for which coverage is sought that determines the scope of coverage. If coverage is sought for a claim that has no connection to a particular property other than that it happened to occur there, then the exclusion for claims arising out of the premises does not apply, because the claim does not "arise out of the premises" but, instead, arises out of the unrelated conduct of the policyholder. On the other hand, if coverage is sought for a claim that has a direct causal relationship to the property, then the exclusion does apply. In the latter situation, the claim is essentially one of premises-based liability and falls within the scope of the exclusion.

{¶ 43} In addition to the considerations regarding the quality or physical condition of the premises discussed in the above-quoted passage, the duties arising from ownership of the property can also, in some situations, correlate

14

sufficiently with the claim asserted to support the exclusion's applicability. If the claim for which coverage is sought directly flows from or has its foundation in the ownership of the property for which the exclusion is asserted, then it may be said that the claim arises out of that property in such situations, too. A useful question to ask is: If the circumstances giving rise to the claim had taken place off both the other owned property and the policy's listed "insured location," would the exclusion apply to bar coverage? If the claim in such circumstances would not be excluded from coverage, then it also is likely that the exclusion would not apply to prevent coverage for the event that, by coincidence, occurred on the other owned property rather than someplace else.

{¶ 44} The trial court resolved this case based on an overly expansive interpretation of the exclusion in the homeowner's policy for claims arising out of the other owned premises, and the court of appeals erroneously affirmed that overly expansive interpretation. The majority of this court, in reversing, correctly concludes that the exclusion should be interpreted more narrowly.

{¶ 45} On the meager record in this case, it is impossible to determine whether the exclusion should apply here to bar coverage. The plaintiffs in the underlying lawsuit, the Whickers, assert in their merit brief before this court that the location of the accident was irrelevant to their claims and that "[t]he accident could have happened anywhere other than the farm property and the claims against the Hunters would still be the same," in support of their argument that the exclusion at issue here does not bar coverage. Appellant, Grinnell Mutual Reinsurance Company, makes similar assertions in its merit brief, including stating that the allegations in the underlying complaint "go to the Hunters' conduct and status as people able to control a minor tortfeasor, not to their status as landowners." Conversely, appellee Westfield repeatedly asserts in its merit brief that the claims against the Hunters exist only because the Hunters owned the

property where the accident occurred and that the exclusion should therefore apply.

{¶ 46} The parties raised these same points before the trial court, but that court did not address this disagreement in granting summary judgment in favor of Westfield based on its overly broad interpretation of the exclusion. This case turns on that question, i.e., whether the claims arise out of the ownership of the premises. But the question is unanswerable from a review of the record before us. Therefore, upon remand, the record must be further developed to allow for consideration of the exclusion's applicability, under the standards that properly govern the exclusion's reach.[3]

_____

**O'DONNELL, J., dissenting.**

{¶ 47} This matter is presented to us as a conflict between appellate districts on the following question: "When construing an insurance policy exclusion, does an injury 'arise out' of a premises only if some dangerous condition exists on the premises that caused or contributed to the injury, or must the injury only originate in or have a causal connection with the premises?"

{¶ 48} The Second District Court of Appeals held in *Am. States Ins. Co. v. Guillermin* (1996), 108 Ohio App.3d 547, 671 N.E.2d 317, that an injury arises

---

3. Appellant, Grinnell Mutual Reinsurance Company, attempts to argue through its second proposition of law in its merit brief in this court that the Indiana farm is an "insured location" under the Westfield policy. However, this argument is outside the scope of the issue that the court of appeals certified a conflict on and that this court agreed to review, and it is also outside the scope of the only proposition of law raised by Grinnell in its memorandum in support of jurisdiction that this court accepted for review. Grinnell could have raised this issue for this court's jurisdictional consideration, but did not do so. Consequently, Grinnell has not properly preserved the issue regarding whether the farm is an insured location. It must therefore be accepted, as an established fact, that the farm is not an insured location for purposes of this appeal. Cf. *Meyer v. United Parcel Serv., Inc.*, 122 Ohio St.3d 104, 2009-Ohio-2463, 909 N.E.2d 106, ¶ 8, fn. 3. Moreover, this fact should also be taken as established for purposes of the trial court's consideration upon remand.

out of a premises only if some dangerous condition exists on the premises that caused or contributed to the injury.

{¶ 49} In conflict with that holding, the Twelfth District Court of Appeals here cited a case from the Eighth Appellate District, *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 77, 29 OBR 83, 503 N.E.2d 212, which held, " 'Arising out of' means generally 'flowing from' or 'having its origin in.' The phrase generally indicates a causal connection with the insured property, not that the insured premises be the proximate cause of the injury." (Citation omitted.) After recognizing federal court authority to the same effect, the Twelfth District used the causal connection test and determined that the ATV accident arose out of the premises.

{¶ 50} The majority opinion correctly characterizes this case as one of contract interpretation of the phrase "arising out of"; in my view, the Twelfth District Court of Appeals properly interpreted this phrase in this policy. That court stated, "As the policy reads, the exclusion applies to bodily injury 'arising out of a premises,' not arising out of a *condition on* a premises." (Emphasis sic.) *Westfield Ins. Co. v. Hunter*, Butler App. Nos. CA2009-05-134 and CA2009-06-157, 2009-Ohio-5642, ¶ 20. The court emphasized that the view taken in *Guillermin* changes the language in the policy to require that the injury must arise out of *a condition on* the premises, here, a dangerous condition. But these words are not part of the policy and not part of the contract—in effect, the court in *Guillermin* added additional language to the policy that is not part of the policy; the better view is as expressed by the appellate court here, citing the Eighth Appellate District and the federal district court of appeals, employing the causal connection test.

{¶ 51} Although this is a matter of first impression for our court in the context of a homeowner's insurance policy, we have previously considered the phrase "arising out of" in *Kish v. Cent. Nat. Ins. Group of Omaha* (1981), 67 Ohio

St.2d 41, 21 O.O.3d 26, 424 N.E.2d 288, and in *Lattanzi v. Travelers Ins. Co.* (1995) 72 Ohio St.3d 350, 650 N.E.2d 430, and in both instances interpreted "arising out of" to require a causal connection. In my view, we should adhere to our precedent and make a similar interpretation in this instance.

{¶ 52} Because the majority strays from this path, I respectfully dissent and would affirm the judgment of the court of appeals.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

**LANZINGER, J., dissenting.**

{¶ 53} I respectfully dissent. The exclusion within the insurance contract plainly states that there will be no coverage for "bodily injury or property damage: * * * e. Arising out of a premises: (1) Owned by an insured * * * that is not an insured location." By modifying the phrase to read "aris[ing] from the quality or condition of the premises" owned by an insured, the majority rewrites the contract, circumvents the parties' intent, and creates an illogical result for similar language within the contract.

### I. Expressed Intent of the Parties

{¶ 54} Michael and Marilyn Hunter purchased two policies. Westfield Insurance Company insured the Hunters' residence along with a rental property. Grinnell Mutual Reinsurance Company insured the Hunters' Indiana farm. Westfield's policy contained an exclusion from liability coverage for bodily injuries "[a]rising out of a premises * * * [o]wned by an insured * * * that is not an insured location." Grinnell's policy contained a similar exclusion. The very existence of the two policies, each obtained by the Hunters to provide coverage for their respective premises, makes clear that the parties intended to exclude coverage for injuries occurring at premises they own that are not insured locations under the respective policies.

{¶ 55} We have held:

{¶ 56} "When confronted with an issue of contractual interpretation, the role of a court is to give effect to the intent of the parties to the agreement. We examine the insurance contract as a whole and presume that the intent of the parties is reflected in the language used in the policy. We look to the plain and ordinary meaning of the language used in the policy unless another meaning is clearly apparent from the contents of the policy. When the language of a written contract is clear, a court may look no further than the writing itself to find the intent of the parties. As a matter of law, a contract is unambiguous if it can be given a definite legal meaning.

{¶ 57} "On the other hand, where a contract is ambiguous, a court may consider extrinsic evidence to ascertain the parties' intent. A court, however, is not permitted to alter a lawful contract by imputing an intent contrary to that expressed by the parties." (Citations omitted.) *Westfield Ins. Co. v Galatis*, 100 Ohio St.3d 216, 2003-Ohio-5849, 797 N.E.2d 1256, at ¶ 11-12.

{¶ 58} I do not agree that the term "arising out of" is ambiguous. The court of appeals and two other courts have stated that " ' "[a]rising out of" means generally "flowing from" or "having its origin in" ' " and that in order for coverage to be excluded, there need only be some causal link to the property rather than a showing that the premises were the proximate cause of the injury. *Westfield Ins. Co. v. Hunter,* 2009-Ohio-5642, 2009 WL 3415894, ¶ 12, quoting *Nationwide Mut. Fire Ins. Co. v. Turner* (1986), 29 Ohio App.3d 73, 77, 29 OBR 83, 503 N.E.2d 212, quoting *Ins. Co. of N. Am. v. Royal Indemn. Co.* (C.A.6, 1970), 429 F.2d 1014, 1017.

{¶ 59} The majority rejects this causal-connection definition, the lead opinion saying that it means that "any claim for injury that occurs on premises owned by the insured other than the insured homeowner's primary residence would be denied, and the insured would not have liability coverage." Lead opinion, ¶ 18. But that is exactly what was bargained for in this homeowner's

policy. Westfield collected premiums for the premises listed on the declarations page, which also included rental property owned by the Hunters. Grinnell collected its premiums to provide coverage for the Hunters' Indiana farm.

{¶ 60} The only reason the Hunters are being sued is that they own the Indiana farm property and allegedly breached a duty of care owed to the children on the property. The personal liability that is claimed arises out of the premises.

{¶ 61} Insurance involves the transfer of risk from insured to insurer. Here Westfield agreed to assume the risk of liability for injuries occurring at, flowing from, having their origin in, or having a causal connection with the Hunters' Hamilton, Ohio residence or the neighboring rental property. Westfield was paid to assume those risks. Westfield further specified that it would not provide liability coverage for injuries arising out of other premises that were owned by the insureds but were not an insured location. Grinnell similarly agreed to assume risks of injuries occurring at, flowing from, having their origin in, or having a causal connection with the Hunters' Indiana farm while excluding injuries arising out of other premises owned by the insureds that are not an insured location, and Grinnell was paid premiums for that coverage. The complementary nature of these policies supports reading the plain language of the policies as providing coverage for injuries arising from the insured location and excluding coverage for injuries arising out of other premises owned by the insured that are not an insured location.

## II. Creation of Illogical Results

{¶ 62} The phrase "arising out of" is used multiple times throughout the Westfield policy. By reading the phrase "arising out of" to require proof that a dangerous condition on the land was the proximate cause of damage, the majority renders this phrase meaningless where it is used elsewhere in the policy. In fact, this term is used to introduce the following exclusions in Westfield's policy: business engaged in by the insured; a rental of premises by an insured; rendering

of or failure to render professional services; ownership, maintenance, or use of a motorized vehicle, watercraft, or aircraft; transmission of a communicable disease; sexual molestation, corporal punishment, or physical or mental abuse; or the use, sale, or manufacture of a controlled substance. An interpretation of the term "arising out of" to mean "arising out of a dangerous condition" creates an illogical result for these other exclusions.

{¶ 63} Moreover, the Westfield policy explicitly limits its coverage for medical payments to conditions of the premises. In the policy's "Medical Payments Coverage," on the very same page of the policy where the "other owned premises" exclusion appears, the policy provides: "As to others, this coverage applies only: * * * 2. To a person off the **insured location,** if the **bodily injury:** a. Arises out of a condition on the **insured location or** the ways immediately adjoining." Thus, the very language that the majority wishes to insert in one place within the policy has already been used by the parties elsewhere in the policy. This surely shows an intent to distinguish between "arising out of" premises and "arising out of a condition on" premises. If the exclusion was to be linked to a condition, the drafters added it; it should not be for this court to do so.

### III. Conclusion

{¶ 64} I would answer the certified question by holding that in the context of an insurance policy exclusion, an injury arises out of premises if the injury originates in or has a causal connection with the premises. Here, the injury giving rise to the suit occurred at the Indiana farm, premises that the Hunters owned but did not insure with Westfield. The only basis for suit against them is their ownership and control of the farm. Any personal liability therefore arises out of the premises that are owned by the insureds and are not an insured location and are accordingly excluded from coverage under its policy. I would affirm the Twelfth District Court of Appeals and hold that Grinnell alone is obligated to defend and indemnify in this case.

LUNDBERG STRATTON, J., concurs in the foregoing opinion.

_____

Isaac, Brant, Ledman & Teetor, L.L.P., James H. Ledman, J. Stephen Teetor, Brandi L. Dorgan, and Scyld D. Anderson, for appellee, Westfield Insurance Company.

Robbins, Kelly, Patterson & Tucker, Daniel J. Temming, and Jarrod M. Mohler, for Terrell, Vince, and Tara Whicker.

Rendigs, Fry, Kiely & Dennis, L.L.P., James J. Englert, and Lynne M. Longtin, for appellant.

_____